# Third District Court of Appeal

## State of Florida

Opinion filed April 3, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2327
Lower Tribunal No. 16-4938
_____

**Ford Mahammad Charlier,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Dava J. Tunis, Judge.

Carlos J. Martinez, Public Defender, and Manuel Alvarez, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Jeffrey R. Geldens, Assistant Attorney General, for appellee.

Before EMAS, C.J., and LOGUE and HENDON, JJ.

HENDON, J.

Ford Mahammad Charlier appeals from his conviction and sentence for second degree murder with a firearm. We affirm.

Charlier was charged with second degree murder of his girlfriend, Jasmine Richards. The evidence against Charlier was entirely circumstantial. Evidence at trial included testimony from Jasmine's mother and Jasmine's friend, both of whom testified that the night before her murder, Jasmine spoke with each of them on the phone, very distressed and relating how she and Charlier had argued and that Jasmine was going to leave the relationship. Phone records confirmed the time of these conversations. Charlier's new girlfriend testified that she and Charlier went clubbing the night before the murder, and they had stopped for wings at Checkers before she dropped him off at the apartment around 5:00 a.m. Surveillance video and testimony of the apartment's security guard, Mr. Allen, confirmed that he let Charlier into the secured building with the Checkers bag around 5:00 a.m. and saw him get into the elevator to the apartment. Mr. Allen confirmed that Charlier left the building by the stairs at 5:45 a.m., and additional video of the stairwell entrance documented the same person going up the stairs through a side door a few minutes later, then leaving again around 6:00 a.m., during the time Jasmine was supposed to leave for work. The security video showed that upon exiting the building Charlier wore different shoes than the ones he wore entering the building. Jasmine's mother became concerned when Jasmine

2

failed to answer multiple phone calls between 6:17 and 7:40 a.m. At 9:45, Jasmine's office called to see why she was not at work. Around 10:30 a.m., Jasmine's mother went to the apartment, found the door unlocked, and discovered Jasmine dead in the bathroom from a gunshot to the head. At the trial, Jasmine's mother testified that on the morning she discovered her daughter's body, Charlier called her and told her he didn't do it. Police tried to reach Charlier by phone, with no response. They traced his calls to his mother's apartment. When they knocked on his mother's door, no one responded. The police remained throughout the evening and subsequently apprehended Charlier when he left his mother's apartment the next morning. The clothing Charlier was seen wearing when he entered Jasmine's apartment building were stained but had been recently washed. Police found no evidence of a forced entry into Jasmine's apartment. They found the Checkers bag near Jasmine's body. The medical examiner indicated that the path of the bullet was consistent with a left-handed shooter (Charlier is left-handed), and estimated the time of death between 5 a.m. and 10:30 a.m., when the body was discovered. The blood in the apartment was only from the victim; a blood trail led from the apartment, down the hallway past the elevator, to the stairwell.

The trial court denied Charlier's motion for judgment of acquittal. The jury found the defendant guilty of second degree murder with a firearm, and the court sentenced him to life imprisonment.

On appeal, Charlier argues that the trial court erred by denying his motion for judgment of acquittal because the State failed to disprove a reasonable hypothesis of innocence. Charlier contends that someone else could have committed the murder after he left the building, as the only evidence is entirely circumstantial. Circumstances that create nothing more than a strong suspicion that the defendant committed the crime, he argues, are not sufficient to support a conviction.

The standard of review on denial of a motion for judgment of acquittal is *de novo*. Reynolds v. State, 934 So. 2d 1128, 1145 (Fla. 2006) (citing Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002)). In a case in which the evidence is wholly circumstantial, as here, not only must the State provide sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence. Pagan, 830 So. 2d at 803. However, the State is not required to conclusively rebut "'every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events." State v. Law, 559 So. 2d 187, 188–89 (Fla. 1989). Indeed,

4

[t]he question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine. Where the circumstantial evidence contradicts the defendant's theory of innocence, and the inferences pointing to guilt are sufficiently strong, the case should go to the jury. The standard for review of a denial of a motion for judgment of acquittal is not whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis other than guilt, but rather whether the jury must reasonably so conclude.

Perez v. State, 565 So. 2d 743, 744 (Fla. 3d DCA 1990) (citations omitted).

Different interpretations of the same facts do not warrant taking the case from the jury. In this instance, the State sufficiently met its burden by showing a view of the evidence that is distinctly inconsistent with Charlier's view that someone else could have murdered Jasmine after he left the apartment around 6:00 a.m. The jury could instead reasonably conclude the victim was alive when the defendant arrived, and she perished while he was there. We find sufficient competent evidence on the record to contradict the appellant's theory of innocence and support the denial of his motion for judgment of acquittal.

Charlier additionally argues that the trial court erroneously allowed the testimony of Jasmine's mother and friend as non-hearsay. We disagree. We review a trial court's decision to admit evidence under an abuse of discretion standard, Williams v. State, 967 So. 2d 735, 747–48 (Fla. 2007), and "[d]iscretion 'is abused only where no reasonable man would take the view adopted by the trial court.'" Nolte v. State, 726 So. 2d 307, 309 (Fla. 2d DCA 1998) (quoting Canakaris v.

Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980)). The statements from Jasmine's mother and friend as to what Jasmine was immediately experiencing the night before her murder were admissible as either excited utterances or as statements made relating to a startling event or condition, while the declarant was under the stress of excitement caused by the event, i.e., her argument with Charlier. See § 90.803(1), Fla. Stat. (2016) (covering statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness."); Pasha v. State, 225 So. 3d 688, 708 (Fla. 2017). There was no suggestion that the statements from the witnesses were untrustworthy, and we conclude that their testimony was appropriately admitted.

After a thorough consideration of the record and issues presented on appeal, we affirm appellant's conviction.

Affirmed.